JOHN M. SKINNER *v.* COLIN ANGLIKER, DIRECTOR OF WHITING FORENSIC INSTITUTE, ET AL.
(5519)

DALY, NORCOTT and FOTI, Js.

Argued December 10, 1987—decision released July 26, 1988

*William J. McCullough,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellants (defendants).

*Albert S. Bill, Jr.,* with whom, on the brief, was *Igor I. Sikorsky, Jr.,* for the appellee (plaintiff).

DALY, J. The plaintiff instituted this action against the defendants[1] for wrongful discharge from employment. The defendants have appealed from the judgment rendered on the jury verdict in favor of the plaintiff, claiming that the trial court erred (1) in denying the defendants' motion to dismiss based on sovereign immunity, (2) in denying the defendants' motion to strike the case from the jury docket, (3) in refusing to charge as requested, and (4) in refusing to charge the jury as requested concerning punitive damages. We find error in part.

---

[1] Colin Angliker is the director of Whiting Forensic Institute, a state operated facility for the mentally ill. The complaint also named Audrey M. Worrell, the commissioner of the department of mental health.

The following facts are relevant to this appeal. On March 7, 1983, the plaintiff was employed by the department of mental health as a forensic treatment specialist at the Whiting Forensic Institute. During the course of his employment, the plaintiff witnessed numerous incidents of both verbal and physical abuse of patients by some of the staff members. The plaintiff introduced evidence that the nursing staff was aware of the patient abuse and failed to take action or make inquiries to stop it. Moreover, the plaintiff made several complaints to his immediate supervisors during the summer and fall of 1983 regarding the patient abuse. The plaintiff was discharged on October 21, 1983, a few days after notifying officials ranked higher than his immediate supervisors of his complaints. His employment status was listed as leave of absence without pay and in December he secured employment at another institution.

In January, 1984, the plaintiff filed his complaint alleging that he was discharged and disciplined by the defendants because he exercised his first amendment rights and that this action was in violation of General Statutes § 31-51q.[2] The defendants, on February 28, 1984, filed a motion to dismiss based on the doctrine of sovereign immunity. In the motion, the defendants

[2] General Statutes § 31-51q provides: "LIABILITY OF EMPLOYER FOR DISCIPLINE OR DISCHARGE OF EMPLOYEE ON ACCOUNT OF EMPLOYEE'S EXERCISE OF CERTAIN CONSTITUTIONAL RIGHTS. Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer."

argued that the case should be dismissed because General Statutes § 31-51q does not constitute a waiver of sovereign immunity. The trial court denied the motion. Thereafter, the plaintiff claimed the case for the jury docket, and the defendants subsequently filed a motion to strike claiming that there was no right to a jury trial under General Statutes § 31-51q. This motion was also denied and the jury trial commenced on July 22, 1986. The jury returned a verdict for the plaintiff awarding him $9000 for present and future loss of earnings, $1 for emotional distress and $26,752.50 for punitive damages. The trial court, after hearing the plaintiff's motion for counsel fees and costs, awarded $3000 in counsel's fees.

The first claim of error put forth by the defendants is that the trial court erred in denying the motion to dismiss based on sovereign immunity. The defendants argue that this action cannot be maintained without the state's consent and that General Statutes § 31-51q does not constitute a waiver of sovereign immunity. We disagree.

It is a well established principle in our state that the defense of sovereign immunity is inappropriate where the legislature, by appropriate legislation consents to being sued. *Horton* v. *Meskill,* 172 Conn. 615, 621, 376 A.2d 359 (1977); *Textron, Inc.* v. *Wood,* 167 Conn. 334, 339, 355 A.2 d 307 (1974). "The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed 'by the use of express terms or by force of a necessary implication.' *Baker* v. *Ives,* [162 Conn. 295, 298, 294 A.2d 290 (1972)]." *Duguay* v. *Hopkins,* 191 Conn. 222, 228, 464 A.2d 45 (1983).

The case before us is one of the first impression. The controlling issue on appeal is whether the legislature intended General Statutes § 31-15q to constitute a

waiver of sovereign immunity. In determining the legislative intent of a particular statute, a reviewing court must look at the exact language used and the legislative history which indicates the purpose underlying the enactment of the statute. *Connecticut Light & Power Co.* v. *Sullivan,* 150 Conn. 578, 581, 192 A.2d 545 (1963); *State* v. *Rado,* 14 Conn. App. 322, 329, 541 A.2d 124 (1988). Our job is not to determine the intent of the legislature by what it meant to say, but to determine the intent by what was actually said. B. Holden & J. Daly, Connecticut Evidence § 50. "If the words of the statute are clear, the duty of a reviewing court is to apply the legislature's directive since 'where the wording is plain, courts will not speculate as to any supposed intention because the question before a court then is not what the legislature actually intended but what intention it expressed by the words that it used.' *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 6, 434 A.2d 293 (1980)." *P. X. Restaurant, Inc.* v. *Windsor,* 189 Conn. 153, 159, 454 A.2d 1258 (1983).

In this case, it is abundantly clear that General Statutes § 31-51q does waive the sovereign immunity by its expressed terms. The legislature, in clear and unambiguous language, put the state in the same status of an employer in the first sentence of the law by stating: "Any employer, *including the state and any instrumentality or political subdivision thereof . . . .*" (Emphasis added.) Moreover, the defense of sovereign immunity is not a defense to an alleged violation of constitutional rights. *Horak* v. *State,* 171 Conn. 257, 261, 368 A.2d 155 (1976). In this case, the plaintiff argued that his employment was terminated by his attempt to exercise his first amendment rights. As our Supreme Court ruled in *Sentner* v. *Board of Trustees,* 184 Conn. 339, 343, 439 A.2d 1033 (1981): "In a constitutional democracy sovereign immunity must relax its bar when

suits against the government complain of unconstitutional acts." See also *Wiley* v. *Lloyd,* 4 Conn. App. 447, 450, 495 A.2d 1082 (1985).

The defendants next claim that the trial court erred in denying their motion to strike[3] the case from the jury docket. Specifically, the defendants argue that the plaintiff does not have a right to a jury trial in an action brought against the state pursuant to General Statutes § 31-51q.

The constitution of Connecticut, article first, § 19, states that "[t]he right of trial by jury shall remain inviolate."[4] This particular provision of our constitution has been consistently construed by Connecticut courts to mean that if there was a right to a trial by jury at the time of the adoption of the provision, then that right remains intact. See, e.g., *Swanson* v. *Boschen,* 143 Conn. 159, 165, 120 A.2d 546 (1959) ("The test is whether the issue raised in the action is substantially of the same nature or is such an issue as prior to 1818 would have been triable to a jury"); *State* v. *Mention,* 12 Conn. App. 258, 263, 530 A.2d 645 (1987); *State* v. *Weisser,* 9 Conn. App. 255, 257, 518 A.2d 655 (1986), cert. denied, 202 Conn. 803, 519 A.2d 1207 (1987).

---

[3] The defendants properly moved to strike the matter from the jury list pursuant to Practice Book § 282 which provides: "If in the opinion of the court a case or matter is improperly upon a trial or assignment list, it will be stricken from the list, or otherwise disposed of, at the discretion of the court. . . ."

[4] Section 19 of article first of the constitution has been amended to provide: "The *right of trial by jury shall remain inviolate,* the number of such jurors, which shall not be less than six, to be established by law; but no person shall, for a capital offense, be tried by a jury of less than twelve jurors without his consent. In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate." (Emphasis added.)

General Statutes § 52-215[5] expands the right to a jury trial. The plaintiff argues that this section is applicable to the present case because it allows such trials in "civil actions involving such an issue of fact as, prior to January 1, 1880, would not present a question properly cognizable in equity." A subsequent provision of General Statutes § 52-215 makes it clear, however, that special statutory proceedings, under enactments of the legislature subsequent to January 1, 1880, are to be tried by the court.

In *United States Fidelity & Guaranty Co.* v. *Spring Brook Farm Dairy,* 135 Conn. 294, 297, 64 A.2d 39 (1949), our Supreme Court stated: "Under this provision [of the Constitution] no party has a constitutional

---

[5] General Statutes § 52-215 provides: "DOCKETS. JURY CASES. COURT CASES. In the superior court a docket shall be kept of all cases. In such docket immediately following the names of the parties and their attorneys in all jury cases shall be entered the word 'jury.' The following-named classes of cases shall be entered in the docket as jury cases upon the written request of either party made to the clerk within thirty days after the return day: Appeals from probate involving the validity of a will or paper purporting to be such, appeals from the actions of commissioners on insolvent estates, and, except as hereinafter provided, *civil actions involving such an issue of fact as, prior to January 1, 1880,* would not present a question properly cognizable in equity, except that there shall be no right to trial by jury in civil actions in which the amount, legal interest or property in demand does not exceed two hundred fifty dollars or in a summary process case. When in any of the above-named cases an issue of fact is joined, the case may, within ten days after such issue of fact is joined, be entered in the docket as a jury case upon the request of either party made to the clerk; and any such case may at any time be entered in the docket as a jury case by the clerk, upon written consent of all parties or by order of court. All issues of fact in any such case shall be tried by the jury, provided the issues agreed by the parties to be tried by the court may be so tried. All cases not entered in the docket as jury cases under the foregoing provisions, including actions in which an account is demanded and judgment rendered that the defendant shall account, writs of habeas corpus and ne exeat, complaints for dissolution of marriage and all other special *statutory proceedings which, prior to January 1, 1880, were not triable by jury,* shall be entered on the docket as court cases, and shall, with all issues of law and issues of fact, other than those hereinbefore specified, which may be joined in actions entered on the docket as jury cases, be disposed of as court cases." (Emphasis added.)

right to a trial by jury of any action not so triable in 1818, when the constitution was adopted. . . . [T]his is true of actions established by statute since the constitution was adopted, unless perhaps, the new remedy constitutes· 'a modification of existing remedies, so vital as to unduly limit and violate the right of trial by jury.' " In *Windham Community Memorial Hospital* v. *Windham,* 32 Conn. Sup. 271, 272–73, 350 A.2d 785 (1975), the plaintiff brought suit under a statute enacted well after 1880 and the defendant claimed a right to a jury trial. The court, upon finding that the cause of action was strictly statutory and that there was no such cause of action prior to 1880, stated that there was no right to a trial by jury.

In the present case, it is clear that this cause of action, if it existed at all prior to 1818, would have been barred under the doctrine of sovereign immunity. Moreover, since it is only recently that there has been "a growing judicial receptivity to the recognition of a tort claim for wrongful discharge"; *Sheets* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 480, 427 A.2d 385 (1980); there is no right to a jury trial.

Since we hold that the plaintiff had no right to a jury trial under the constitution or General Statutes § 52-215, it is not necessary to consider the defendants' remaining claims.

There is error in part, the judgment is set aside and the case is remanded for further proceedings in accordance with the opinion.

In this opinion the other judges concurred.